[Cite as *State v. Gideon*, 2021-Ohio-1863.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                CASE NO.  1-18-27

      v.

JAMES A. GIDEON,                         O P I N I O N

      DEFENDANT-APPELLANT.

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                CASE NO.  1-18-28

      v.

JAMES A. GIDEON,                         O P I N I O N

      DEFENDANT-APPELLANT.

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                CASE NO.  1-18-29

      v.

JAMES A. GIDEON,                         O P I N I O N

      DEFENDANT-APPELLANT.

**Appeals from Lima Municipal Court
Trial Court Nos. 17CRB01386, 17CRB01387, and 17CRB01385**

**Judgments Affirmed**

**Date of Decision:   June 1, 2021**

**APPEARANCES:**

*Dennis C. Belli* **for Appellant**

*Anthony L. Geiger* **for Appellee**

**ZIMMERMAN, J.**

{¶1} This case is before this court on remand from the Supreme Court of Ohio.  *State v. Gideon*, ___ Ohio St.3d ___, 2020-Ohio-5635, *overruled*, *State v. Gideon*, ___ Ohio St.3d ___, 2020-Ohio-6961.  Based on the Supreme Court of Ohio's instructions, we will consider the assignments of error that were rendered moot by our prior opinion.  For the reasons that follow, we affirm.

{¶2} This case was originally before this court on appeal from the May 11, 2018 judgment entries of sentence of the Lima Municipal Court convicting defendant-appellant, James. A. Gideon ("Gideon"), of sexual imposition in case

numbers 17CRB01385, 17CRB01386, and 17CRB01387.[1] In that appeal, this court vacated Gideon's sexual-imposition convictions and remanded the cases for a new trial after we concluded that the trial court should have granted Gideon's motions to suppress evidence under *Garrity v. New Jersey*. 385 U.S. 493, 87 S.Ct. 616 (1967). On review, the Supreme Court of Ohio concluded on December 15, 2020 that Gideon's subjective belief that his medical license would be penalized for remaining silent was not objectively reasonable. *Gideon*, ___ Ohio St.3d ___, 2020-Ohio-5635, at ¶ 24. The court further concluded that assignments of error challenging sufficiency of the evidence cannot be considered moot notwithstanding a conclusion that evidence was improperly admitted at trial. *Id.* at ¶ 29.

{¶3} On December 31, 2020, the Supreme Court of Ohio recognized that it applied an incorrect standard of review in its previous opinion and granted Gideon's motion to reconsider that opinion. *Gideon*, ___ Ohio St.3d ___, 2020-Ohio-6961, at fn. 1. Applying the correct standard of review, the Supreme Court of Ohio reconsidered its previous opinion but remained steadfast in its conclusion that Gideon's subjective belief that his medical license would be penalized for remaining silent was not objectively reasonable. *Id.* at ¶ 24. The court's sufficiency-of-the-evidence conclusion remained unchanged. *Id.* at ¶ 29. Although not assigned as

---

[1] This court and the Supreme Court of Ohio recited much of the factual and procedural background of these cases, and we will not duplicate those efforts here. *See State v. Gideon*, 3d Dist. Allen No. 1-18-27, 2019-Ohio-2482, *rev'd*; *State v. Gideon*, ___ Ohio St.3d ___, 2020-Ohio-5635, *overruled*, *State v. Gideon*, ___ Ohio St.3d ___, 2020-Ohio-6961.

error, the Supreme Court ordered the other assignments of error that this court deemed to be moot to be considered on remand. Based on the court's opinion, we will proceed to address the three assignments of error which had been found moot.

## Assignment of Error No. II

**The Trial Court's Order Consolidating the Separately-Docketed Sexual Imposition Charges for the Trial Exposed Defendant-Appellant to a Substantial Likelihood that the Jury Would "Bootstrap" the Allegations of Different Patients in Contravention of Evid.R. 404(B) and R.C. 2907.06(B), and Thereby Violated His Sixth and Fourteenth Amendment Right to a Fundamentally Fair Jury Trial. (Apx. A-19; 04/20/18 Tr. 82-84; 04/21/18 Tr. 20-21)**

{¶4} In his second assignment of error, Gideon argues that he was unfairly prejudiced by the trial court's order joining the cases for purposes of trial. Specifically, Gideon contends that the trial court abused its discretion by joining the cases for purposes of trial because it permitted the jury to "impermissibly use testimony supporting one charge as corroboration for other charges." (Appellant's Brief at 15).

### *Standard of Review*

{¶5} "Issues of joinder and severance are generally reviewed under an abuse of discretion standard." *State v. Plott*, 3d Dist. Seneca No. 13-15-39, 2017-Ohio-38, ¶ 52, citing *State v. Shook*, 3d Dist. Logan No. 8-14-01, 2014-Ohio-3987, ¶ 22 and *State v. Bell*, 3d Dist. Seneca No. 13-12-39, 2013-Ohio-1299, ¶ 27. An abuse

-4-

of discretion implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

*Analysis*

**{¶6}** "In general, the law favors joining multiple offenses in a single trial if the offenses charged 'are of the same or similar character.'" *State v. Valentine*, 5th Dist. Fairfield No. 18 CA 27, 2019-Ohio-2243, ¶ 43, quoting *State v. Lott*, 51 Ohio St.3d 160, 163 (1990), citing *State v. Torres*, 66 Ohio St.2d 340 (1981). "Under Crim.R. 13, a trial court may order two or more indictments to be tried together 'if the offenses or the defendants could have been joined in a single indictment or information.'" *Plott* at ¶ 54, quoting Crim.R. 13. "Two or more offenses may be charged in the same indictment if they are of 'the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct.'" *Id.*, quoting Crim.R. 8(A).

**{¶7}** "Nonetheless, if it appears that a criminal defendant would be prejudiced by such joinder, then the trial court is required to order separate trials." *Valentine* at ¶ 44, citing Crim.R. 14.

> To prevail on a motion to sever, a defendant has the burden of demonstrating that "(1) his rights were prejudiced, (2) that at the time of the motion to sever he provided the trial court with sufficient information so that it could weigh the considerations favoring joinder against the defendant's right to a fair trial, and (3) that given the

> information provided to the court, it abused its discretion in refusing to separate the charges for trial."

*Plott* at ¶ 55, quoting *State v. Schaim*, 65 Ohio St.3d 51, 59 (1992). "A defendant's claim of prejudice is negated when: (1) evidence of the other crimes would have been admissible as 'other acts' evidence under Evid.R. 404(B) or (2) the evidence of each crime joined at trial is simple and direct." *State v. Ahmed*, 8th Dist. Cuyahoga No. 84220, 2005-Ohio-2999, ¶ 22, citing *Lott* at 163, *Schaim* at 59, and *State v. Franklin*, 62 Ohio St.3d 118, 122 (1991).

{¶8} "'Evid.R. 404(B) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."'" *State v. Bagley*, 3d Dist. Allen No. 1-13-31, 2014-Ohio-1787, ¶ 56, quoting *State v. May*, 3d Dist. Logan No. 8-11-19, 2012-Ohio-5128, ¶ 69, quoting Evid.R. 404(B). "'However, there are exceptions to the general rule: "It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."'" *Bagley* at ¶ 56, quoting *May* at ¶ 69, quoting Evid.R. 404(B). *See also* R.C. 2945.59. "'The list of acceptable reasons for admitting testimony of prior bad acts into evidence is non-exhaustive.'" *Bagley* at ¶ 56, quoting *State v. Persohn*, 7th Dist. Columbiana No. 11 CO 37, 2012-Ohio-6091, ¶ 23, citing *State v. Melton*, 11th Dist. Lake No. 2009-L-078, 2010-Ohio-1278, ¶ 78, and citing *State v. Faye*, 3d Dist. Wyandot Nos. 16-99-08 and 16-99-09, 2000 WL 566741, *4 (May 4, 2000).

{¶9} "'Under the second method, the "joinder" test, the state is merely required to show that evidence of each crime joined at trial is simple and direct.'" *Valentine* at ¶ 47, quoting *Lott* 163. The Supreme Court of Ohio has unequivocally stated "that 'when simple and direct evidence exists, an accused is not prejudiced by joinder regardless of the nonadmissibility of evidence of these crimes as 'other acts' under Evid.R. 404(B)." *Id.*, quoting *Lott* at 163. "Evidence is 'simple and direct' if (1) the jury is capable of readily separating the proof required for each offense, (2) the evidence is unlikely to confuse jurors, (3) the evidence is straightforward, and (4) there is little danger that the jury would 'improperly consider testimony on one offense as corroborative of the other.'" (Citations omitted.) *Id.* at ¶ 48, quoting *State v. Wright*, 4th Dist. Jackson No. 16CA3, 2017-Ohio-8702, ¶ 52.

{¶10} "Courts have held that evidence of multiple offenses is 'simple and direct' where, for example, the offenses involved different victims, different incidents or factual scenarios, and different witnesses." *Id.* at ¶ 49, citing *State v. Dantzler*, 10th Dist. Franklin Nos. 14AP-907 and 14AP-908, 2015-Ohio-3641, ¶ 23 (concluding that the defendant was not prejudiced by joinder because "[t]he evidence relating to each incident was simple and direct: the incidents occurred separately, involved different victims, and different eyewitnesses independently identified defendant as the shooter at each incident") and *State v. Lewis*, 6th Dist.

Lucas Nos. L-09-1224 and L-09-1225, 2010-Ohio-4202, ¶ 33 ("Ohio appellate courts routinely find no prejudicial joinder where the evidence is presented in an orderly fashion as to the separate offenses or victims without significant overlap or conflation of proof.").

{¶11} "If either the 'other acts' test or the 'simple and direct' test is met, a defendant cannot establish prejudice from the joinder." *Id.* at ¶ 50. *See also Lott* at 163 ("Under the second method, the 'joinder' test, the state is not required to meet the stricter 'other acts' admissibility test, but is merely required to show that evidence of each crime joined at trial is simple and direct.")

{¶12} Here, the trial court joined seven cases, which involved similar offenses—Gideon was charged with sexual imposition in violation of R.C. 2907.06(A)(1)—occurring separately and with different victims.[2] In its entry joining the cases for trial, the trial court concluded that joinder was appropriate under the simple-and-direct test *and* the other-acts test. Relative to the simple-and-direct test, the trial court concluded that "the evidence reference on each charge appears to be simple and direct." (Case No. 17CRB01385, Doc. No. 27A); (Case No. 17CRB01386, Doc. No. 18A); (Case No. 17CRB01387, Doc. No. 15A). Specifically, the trial court concluded that the evidence is unlikely to confuse the

---

[2] Case numbers 17CRB01711, 17CRB01712, 17CRB01713, and 17CRB01765 were joined with case numbers 17CRB01385, 17CRB01386, 17CRB01387 for purposes of trial; however, case numbers 17CRB01711, 17CRB01712, 17CRB01713, and 17CRB01765 are not before this court.

jurors or be "difficult for them to consider each charge separately." (*Id.*); (*Id.*); (*Id.*). Furthermore, the trial court noted that the State intended to present "other evidence * * * to corroborate the victims' testimony" and that the trial court would instruct the jury to consider each count, and the evidence applicable to each count, separately. (*Id.*); (*Id.*); (*Id.*). Relative to the other-acts test, the trial court concluded that "the testimony of each victim is admissible in each case and is relevant to motive, opportunity, intent, preparation, plan, knowledge or absence of mistake or accident" since "the same charge is pending for each" victim and "[t]hey all allegedly were patients and were subjected to inappropriate touching by their physician" and "[t]he incidents occurred over a relatively brief period of time in examination rooms." (*Id.*); (*Id.*); (*Id.*).

{¶13} We conclude that the trial court did not abuse its discretion by joining the cases for purposes of trial because the evidence is simple and direct. Importantly, there was no complicated methodology to Gideon's crimes. *See Valentine* at ¶ 56. Specifically, Gideon committed the sexual-imposition offenses at the same location in Bluffton, Ohio—Gideon's medical office—between the dates of October 2016 and May 2017. Each victim testified as to the sexual contact that occurred and the State presented independent corroborating evidence. *Compare id.* at ¶ 55 (concluding that joinder was appropriate because the evidence was simple and direct since Valentine "committed these sexual abuse offenses at the same

locations" between a similar period of time; "[e]ach victim testified in detail as to the sexual abuse which occurred at [Valentine's] home"; and "[c]orroboration in the form of disclosure to other individuals was also presented"). *See also Shook*, 2014-Ohio-3987, at ¶ 25-26.

{¶14} Moreover, the trial court cautioned the jury to consider each count, and the evidence applicable to each count, separately. *See State v. Wilson*, 5th Dist. No. 16-CAA-08-0035, 2017-Ohio-5724, ¶ 53 ("'Courts have held that any prejudice that results from the joinder of offenses is minimized when a trial court cautions a jury before deliberations to consider each count, and the evidence applicable to each count separately, and to state its findings as to each count uninfluenced by its verdict on any other counts.'"), quoting *State v. Freeland*, 4th Dist. Ross No. 12CA003352, 2015-Ohio-3410, ¶ 16. "[W]e presume that the jury followed the [trial] court's instructions." *Valentine* at ¶ 57, citing *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, ¶ 192. This presumption is bolstered by the jury's not-guilty findings in two of the cases that it considered. *See Shook* at ¶ 28 (concluding that "[t]he result of the trial seems to suggest that the testimony was simple and direct as the jury acquitted Shook on one of the counts").

{¶15} Because it is dispositive, we need address only the trial court's determination that joinder was appropriate under the simple-and-direct test. *Accord Valentine* at ¶ 55 ("While the state argues that the cases could be tried together under

either test, there is no reason for us to look to the more stringent "other acts" test because the evidence here was simple and straightforward."). *See also Shook* at ¶ 28. Therefore, because the evidence was simple and direct, we cannot conclude that Gideon was prejudiced by the joinder of the cases for purposes of trial. *See Valentine* at ¶ 56; *Shook* at ¶ 29. Thus, the trial court did not abuse its discretion by joining the cases for purposes of trial.

{¶16} Gideon's second assignment of error is overruled.

### Assignment of Error No. III

**The Trial Court's Instructions and the Prosecutor's Closing Argument Encouraged the Jurors to Consider the Testimony of One Alleged Victim as Corroboration of the Testimony of Another Alleged Victim in Contravention of Evid.R. 404(B) and R.C. 2907.06(B), and Thereby Violated Defendant-Appellant's Right to a Fundamentally Fair Jury Trial Under the Sixth and Fourteenth Amendments to the United States Constitution. (04/18/18 Tr. 115-17; 04/21/18 44, 104-05, 114-15)**

{¶17} In his third assignment of error, Gideon argues that the trial court and the State improperly encouraged the jury to consider the testimony of one victim as corroborating evidence of the veracity of another victim's testimony.

*Standard of Review*

{¶18} Generally, "'[a]n appellate court reviews a trial court's decision to give the jury a particular set of jury instructions under an abuse of discretion standard." *State v. Harrison*, 3d Dist. Logan No. 8-14-16, 2015-Ohio-1419, ¶ 61, quoting *State v. Barker*, 11th Dist. Portage No. 2010-P-0044, 2012-Ohio-522, ¶ 91,

citing *State v. Martens*, 90 Ohio App.3d 338, 343 (3d Dist.1993). "However, when a jury instruction raises a question of law, we apply a de novo standard of review." *State v. Sheldon*, 3d Dist. Hardin No. 6-18-07, 2019-Ohio-4123, ¶ 66. "De novo review is independent, without deference to the lower court's decision." *State v. Hudson*, 3d Dist. Marion No. 9-12-38, 2013-Ohio-647, ¶ 27.

{¶19} "The test regarding prosecutorial misconduct during closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected the defendant's substantial rights." *Harrison* ¶ 50, citing *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, ¶ 231, citing *State v. Smith*, 14 Ohio St.3d 13, 14 (1984). "'To establish prejudice, a defendant must show that a reasonable probability exists that, but for the prosecutor's improper remarks, the result of the proceeding would have been different. Thus, "[n]ot every intemperate remark by counsel can be a basis for reversal."'" *State v. Liles*, 3d Dist. Allen No. 1-14-61, 2015-Ohio-3093, ¶ 31, quoting *State v. Porter*, 4th Dist. Meigs No. 10CA15, 2012-Ohio-1526, ¶ 20, quoting *State v. Landrum*, 53 Ohio St.3d 107, 112 (1990).

*Analysis*

{¶20} First, Gideon argues that the trial court "failed to tell Gideon's jury that testimony of one patient could not be considered as substantive proof of a sexual imposition charge lodged by another patient." (Appellant's Brief at 20).

Case Nos. 1-18-27, 28 and 29

Specifically, Gideon contends that he was prejudiced by the trial court's jury instructions because the trial court failed to omit the irrelevant portions of Evid.R. 404(B).  Here, the trial court instructed the jury as follows:

> The charges set forth in each complaint constitute a separate and distinct matter.  You must consider each complaint and evidence applicable to each complaint separately, and you must state your findings as to each complaint uninfluenced by your verdict on the other complaint.  The Defendant may be found guilty or not guilty of any one or all of the offenses charged.

> The State called several alleged victims to testify to different offenses.  You are limited in how you may consider the testimony regarding one alleged offense in relation to a separate and distinct or other act.  You are permitted to consider the other acts evidence only for a limited purpose.

> The State cannot convict somebody of bad character so his character is not at issue here.  And the testimony regarding other offenses isn't being admitted to show the Defendant's character or he acted in conformity with that character.  It is being admitted prove other elements of the offense, such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

(Apr. 21, 2018 Tr. at 114-115).

{¶21} Contrary to Gideon's argument on appeal, the trial court did not provide an erroneous jury instruction.  The Supreme Court of Ohio recently cautioned that, "when a court issues a limiting instruction with respect to other-acts evidence, the instruction should be tailored to the facts of the case.  The boilerplate language contained in the Ohio Jury Instructions addressing other-acts evidence is merely a template."  *State v. Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, ¶ 70.

-13-

Here, the trial court's instruction is not only consistent with Ohio's Jury Instruction, but is also tailored to the facts of the cases. *See Ohio Jury Instructions*, CR Section 401.25 (Rev. Aug. 16, 2006). Therefore, we conclude that the trial court's jury instruction did not mislead the jury and is a correct statement of law. *See State v. Burks*, 8th Dist. Cuyahoga No. 105975, 2018-Ohio-2515, ¶ 30-31.

{¶22} Accordingly, we turn to Gideon's argument that the State's suggestion in its closing argument that the jury "consider 'other testimony * * * from the other victims * * * to prove the elements of an offense such as motive. You can use it to prove elements of an offense such as intent, preparation, plan, knowledge, or absence of mistake or accident'" and that the jury "consider the testimony of the five patients collectively * * * ." (Appellant's Brief is at 18, quoting Apr. 21, 2018 Tr. at 44). Importantly, because Gideon's trial counsel did not object to the State's closing argument, this argument calls for a plain-error analysis. *See State v. Wamsley*, 117 Ohio St.3d 388, 2008-Ohio-1195, ¶ 25; *State v. Cleavenger*, 11th Dist. Portage No. 2019-P-0036, 2020-Ohio-73, ¶ 13. *See also State v. Smith*, 3d Dist. Hardin No. 6-14-14, 2015-Ohio-2977, ¶ 63, citing *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, ¶ 139 and *State v. Saleh*, 10th Dist. Franklin No. 07AP-431, 2009-Ohio-1542, ¶ 68.

{¶23} "Crim.R. 52(B) governs plain-error review in criminal cases." *Bagley*, 2014-Ohio-1787, at ¶ 55, citing *State v. Risner*, 73 Ohio App.3d 19, 24 (3d

Dist.1991). "To demonstrate plain error, the defendant must demonstrate that the trial court deviated from a legal rule, the error was an obvious defect in the proceeding, and the error affected a substantial right." *State v. Howard*, 3d Dist. Marion No. 9-10-50, 2011-Ohio-3524, ¶ 83, citing *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). "The defendant must also demonstrate that the outcome of his trial would clearly have been different but for the trial court's errors." *Id.*, citing *State v. Waddell*, 75 Ohio St.3d 163, 166 (1996), citing *State v. Moreland*, 50 Ohio St.3d 58. "We recognize plain error "'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."'" *Id.*, quoting *State v. Landrum*, 53 Ohio St.3d 107, 110 (1990), quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶24} "Prosecutors are afforded considerable latitude in closing argument." *State v. Encarnacion*, 10th Dist. Franklin No. 16AP-817, 2017-Ohio-5530, ¶ 9, citing *State v. Ballew*, 76 Ohio St.3d 244, 255 (1996). "A prosecutor may comment on "'what the evidence has shown and what reasonable inferences may be drawn therefrom."'" *Id.*, quoting *Lott*, 51 Ohio St.3d at 165, quoting *State v. Stephens*, 24 Ohio St.2d 76, 82 (1970), and citing *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, ¶ 159 ("A prosecutor may state an opinion if based on evidence presented at trial."). *See State v. McGuire*, 3d Dist. Allen No. 1-13-47, 2015-Ohio-1887, ¶ 81 ("In closing arguments, prosecutors are entitled to some latitude

regarding what the evidence has shown and the inferences that can be drawn."), citing *Ballew* at 255.

{¶25} "A prosecutor's isolated comments are not to be taken out of context and given their most damaging meaning." *Encarnacion* at ¶ 9, citing *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, ¶ 94, citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 647, 94 S.Ct. 1868 (1974). "Instead, an appellate court must review a closing argument in its entirety to determine whether prejudicial error occurred." *Id.*, citing *Noling* at ¶ 94, citing *State v. Frazier*, 73 Ohio St.3d 323, 342 (1995).

{¶26} Here, Gideon cannot demonstrate that he was prejudiced by the State's closing argument. Specifically, Gideon cannot demonstrate that the outcome of his trial would have been different. *See State v. Thompson*, 3d Dist. Henry No. 7-16-10, 2017-Ohio-792, ¶ 26. Indeed, as we addressed above, in its jury instructions the trial court not only instructed the jury as to how it could consider the testimony of each victim, but the trial court instructed the jury that "[t]he evidence does not include * * * the opening statements or closing arguments of counsel. The opening statements and closing arguments of counsel are designed to assist you. They are not evidence." (Apr. 21, 2018 Tr. at 108). Similar to our assessment in Gideon's second assignment, "[a] jury is presumed to follow and comply with instructions given by the trial court." *State v. Palmer*, 12th Dist. Butler No. CA2013-12-243, 2014-Ohio-5491, ¶ 27, quoting *State v. Carpenter*, 12th Dist. Butler No. CA2005-

11-494, 2007-Ohio-5790, ¶ 20, citing *Pang v. Minch*, 53 Ohio St.3d 186 (1990). *See also State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, ¶ 194. Importantly, there is no evidence that the jury failed to follow the trial court's jury instructions in these cases since the jury found Gideon not guilty of two of the charges that were presented to it. Therefore, Gideon cannot demonstrate that the trial court provided an erroneous jury instruction or that he was prejudiced by the State's closing argument.

{¶27} Accordingly, Gideon's third assignment of error is overruled.

### Assignment of Error No. IV

**Defendant-Appellant's Conviction for Sexual Imposition as to Former Patient [M.M.] is Not Supported by Sufficient Evidence to Satisfy the Requirements of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Alternatively, the Jury's Guilty Verdict is Against the Manifest Weight of the Evidence. (04/20/18 Tr. 79; 04/21/18 Tr. 20-21).**

{¶28} In his fourth assignment of error, Gideon argues that his sexual-imposition conviction in case number 17CRB01385 is based on insufficient evidence and is against the manifest weight of the evidence. Specifically, Gideon alleges that his sexual-imposition conviction in case number 17CRB01385 is based on insufficient evidence because the State did not present any evidence that his "use of therapeutic massage fell outside the scope of acceptable medical care." (Appellant's Brief at 22). Gideon argues that his sexual-imposition conviction in

case number 17CRB01385 is against the manifest weight of the evidence because the victim—M.M.—was not credible.

*Standard of Review*

**{¶29}** Manifest "weight of the evidence and sufficiency of the evidence are clearly different legal concepts." *State v. Thompkins*, 78 Ohio St.3d 380, 389 (1997). Therefore, we address each legal concept individually.

**{¶30}** "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33, citing *State v. Williams*, 197 Ohio App.3d 505, 2011-Ohio-6267, ¶ 25 (1st Dist.). *See also State v. Berry*, 3d Dist. Defiance No. 4-12-03, 2013-Ohio-2380, ¶ 19

("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence."), citing *Thompkins* at 386.

{¶31} On the other hand, in determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

*Sufficiency of the Evidence Analysis*

{¶32} We will begin by addressing Gideon's sufficiency-of-the-evidence argument as it relates to his sexual-imposition conviction in case number 17CRB01385. Gideon was convicted of sexual imposition in violation of R.C.

2907.06, which provides in its relevant part, "No person shall have sexual contact with another, not the spouse of the offender * * * when * * * [t]he offender knows that the sexual contact is offensive to the other person * * * or is reckless in that regard." R.C. 2907.06(A)(1). "Sexual contact" means "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶33} "To obtain a conviction for sexual imposition in violation of R.C. 2907.06(A)(1), the State must prove either that the defendant knew that the sexual contact was offensive or that the defendant was reckless with respect to whether the sexual contact was offensive." *State v. Wrasman*, 3d Dist. Auglaize No. 2-20-03, 2020-Ohio-6887, ¶ 9. "Thus, the culpable mental state for a violation of R.C. 2907.06(A)(1) is either knowledge or recklessness." *Id.*, citing *State v. Courie*, 11th Dist. Ashtabula No. 2014-A-0043, 2015-Ohio-2894, ¶ 40-42. "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

> A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

*Id.* "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C). "A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist." *Id.*

{¶34} "In addition, '[t]he definition of sexual contact includes an express culpability requirement of "purpose."'" *Wrasman* at ¶ 10, quoting *State v. Curtis*, 12th Dist. Butler No. CA2008-01-008, 2009-Ohio-192, ¶ 90, citing R.C. 2907.01(B) and *State v. Mundy*, 99 Ohio App.3d 275, 295 (2d Dist.1994), and citing *State v. Dunlap*, 129 Ohio St.3d 461, 2011-Ohio-4111, ¶ 23-28. "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A). "'"[T]here is no requirement that there be direct testimony regarding sexual arousal or gratification."'" *Wrasman* at ¶ 10, quoting *State v. Young*, 12th Dist. Butler No. CA2018-03-047, 2019-Ohio-912, ¶ 47, quoting *State v. English*, 12th Dist. Butler No. CA2013-03-048, 2014-Ohio-441, ¶ 69. "Rather, '"[w]hether the touching was performed for the purpose of sexual arousal or gratification is a question of fact to be inferred from the type,

nature, and circumstances of the contact.'"'" *Id.*, quoting *Young* at ¶ 47, quoting *State v. Gesell*, 12th Dist. Butler No. CA2005-08-367, 2006-Ohio-3621, ¶ 25. However, "a person may not be convicted of sexual imposition 'solely upon the victim's testimony unsupported by other evidence.'" *State v. Roy*, 9th Dist. Lorain No. 13CA010404, 2014-Ohio-5186, ¶ 48, quoting R.C. 2907.06(B).

**{¶35}** On appeal, Gideon challenges only his sexual imposition conviction in case number 17CRB01385. In that case, the State alleged that Gideon was guilty of sexual imposition as to M.M. Accordingly, we need to address only the sufficiency of the evidence supporting Gideon's sexual-imposition conviction as it relates to M.M. In that case, the State was required to prove that Gideon had sexual contact with M.M., who was not his spouse, and that Gideon knew that the sexual contact was offensive to M.M. or was, at least, reckless in that regard. *See State v. Wine*, 3d Dist. Auglaize No. 2-12-01, 2012-Ohio-2837, ¶ 52.

**{¶36}** However, Gideon does not dispute the evidence underlying the elements of the sexual imposition conviction as it relates to M.M.; rather, he disputes whether the State presented sufficient evidence "that the therapeutic massage administered by Gideon fell outside the scope of acceptable medical care." (Appellant's Brief at 23). Thus, we will address only whether the State must present sufficient evidence that a touching falls outside of the scope of acceptable medical care for a person to be guilty of sexual imposition.

{¶37} In support of his argument that the State must prove that a touching falls outside the scope of acceptable medical care for him to be guilty of sexual imposition, Gideon directs us to *People v. Burpo* and *State v. Nucklos*.[3] 164 Ill.2d 261 (1995); 121 Ohio St.3d 332, 2009-Ohio-792. In *Burpo*, the defendant, a medical doctor, was charged with violating Illinois's criminal-sexual-assault statute. Here, Gideon contends that this court should add an element to Ohio's sexual-imposition statute requiring the State "'to establish beyond a reasonable doubt what the medical standards were, that the physician intentionally transgressed those standards, and that the patient did not consent to the transgressions'" in cases involving licensed-medical professionals. (Appellant's Brief at 22, quoting *Burpo* at 265). Gideon argues that the Illinois statute is applicable in Ohio based on the Supreme Court of Ohio's decision in *Nucklos* in which the court concluded that "the

---

[3] To the extent that Gideon contends that Ohio's sexual-imposition statute is unconstitutional as applied to him because "[o]ther jurisdictions have recognized that principles of constitutional due process preclude the state from enforcing a sexual assault statute in a manner that criminalizes bona fide medical or health care treatment or procedures," Gideon failed to raise such constitutional challenge prior to or at trial. (Appellant's Brief at 22, citing *State v. Lesik*, 322 Wis.2d 753, 762 (2009). "The Supreme Court of Ohio has held that, "'[f]ailure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal.""" *State v. Heft*, 3d Dist. Logan No. 8-09-08, 2009-Ohio-5908, ¶ 29, quoting *State v. Rice*, 3d Dist. Allen Nos. 1-02-15, 1-02-29, and 1-02-30, 2002-Ohio-3951, ¶ 7, quoting *State v. Awan*, 22 Ohio St.3d 120 (1986), syllabus. "However, the waiver doctrine set forth by *Awan* is discretionary; thus, 'even where waiver is clear, a reviewing court may consider constitutional challenges to the application of statutes in specific cases of plain error or where the rights and interests involved may warrant it.'" *Id.*, quoting *Rice* at ¶ 7, citing *In re M.D.*, 38 Ohio St.3d 149 (1988), syllabus. Nevertheless, ""'discretion will not ordinarily be exercised to review such claims, where the right sought to be vindicated was in existence prior to or at the time of trial.""" *Id.*, quoting *Rice* at ¶ 7, quoting *State v. 1981 Dodge Ram Van*, 36 Ohio St.3d 168, 170-71 (1988), quoting *State v. Woodards*, 6 Ohio St.2d 14, 21 (1966). The constitutional issue Gideon raises on appeal was available to him before and at trial. Therefore, Gideon waived the issue on appeal, and we decline to address it.

state bears the burden of proving beyond a reasonable doubt * * * that the licensed health professional violated statutes or regulations that define the standard of care for dispensing controlled substances." *Nucklos* at ¶ 22.

{¶38} Gideon's argument is misplaced. Requiring the State to prove that a touching falls outside of the scope of acceptable medical care for a person to be guilty of sexual imposition adds an additional element to the offense of sexual imposition not included by the legislature. "'[I]t is only the legislature, not the judiciary,' that 'has the power to engraft or enact additional elements' of an offense." *State v. Bickel*, 5th Dist. Fairfield No. 13-CA-44, 2014-Ohio-1718, ¶ 20, quoting *State v. O'Connor*, 12th Dist. Butler No. CA2001-08-195, 2002-Ohio-4122, ¶ 30. *See also State v. Sullivan*, 2d Dist. Montgomery No. 23948, 2011-Ohio-2976, ¶ 16. Until the legislature acts, that element cannot be judicially engrafted to the offense. *See State v. Duncan*, 10th Dist. Franklin No. 88AP-161, 1988 WL 112343, *5 (Oct. 18, 1988).

{¶39} Indeed, the statutes at issue in *Burpo* and *Nucklos* include licensed-medical-professional exceptions in the statutory construction. *See Burpo* at 263-264 (noting that the criminal-sexual-assault statute set "forth an exception or exemption to the offense of aggravated criminal sexual assault: 'Any medical examination or procedure which is conducted by a physician, nurse, medical or hospital personnel, parent, or caretaker for purposes of and in a manner consistent

with reasonable medical standards is not an offense'"), quoting 720 Ill. Comp. Stat. Ann. 5/12-18 (1991); *Nucklos* at ¶ 22 (concluding that "to convict a licensed health professional of trafficking in drugs under R.C. 2925.03(A), the state bears the burden of proving beyond a reasonable doubt the inapplicability of the licensed-health-professional exception in R.C. 2925.03(B)(1) by submitting evidence that the licensed health professional violated statutes or regulations that define the standard of care for dispensing controlled substances").

{¶40} Nevertheless, viewing the evidence in a light most favorable to the prosecution, we conclude that Gideon's sexual imposition conviction is based on sufficient evidence. That is, the State presented sufficient evidence at trial from which the trier of fact could reasonably infer that Gideon knew that the sexual contact was offensive to M.M. or was, at least, reckless in that regard. Indeed, even though Gideon's argument highlights evidence that he touched M.M. for legitimate medical purposes, his argument does not negate the presence of countervailing evidence in the record that, if believed by the trier of fact, established that Gideon touched M.M. for his own sexual gratification. *Accord State v. Heiney*, 6th Dist. Lucas No. L-16-1042, 2018-Ohio-3408, ¶ 94 ("While Heiney's arguments highlight evidence that he touched M.S. and K.O. for legitimate medical purposes, his arguments do not negate the presence of countervailing evidence in the record that, if believed by the jury, established that Heiney touched M.S. and K.O. for his own

sexual gratification."). Specifically, M.M. testified that Gideon rubbed her right buttocks "softly and intimately," which caused her to jump off of the exam table and put her clothes back on because she "felt violated." (Apr. 19, 2018 Tr. at 86-87). M.M. further testified that Gideon stated to her (as she pulled away from his touching), "don't worry, you don't have anything I want." (*Id.* at 86). Moreover, M.M. unequivocally testified that Gideon did not indicate that it was medically necessary for him to touch her intimately and that Gideon's touching felt "provocative." (*Id.* at 87, 92).

{¶41} Based on that evidence, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Gideon knew that the sexual contact was offensive to M.M. or was, at least, reckless in that regard. Consequently, Gideon's sexual imposition conviction is based on sufficient evidence.

{¶42} Having concluded that Gideon's sexual-imposition conviction is based on sufficient evidence, we next address Gideon's argument that his sexual-imposition conviction is against the manifest weight of the evidence.

*Manifest Weight of the Evidence*

{¶43} Gideon contends that his sexual-imposition conviction in case number 17CRB01385 is against the manifest weight of the evidence because M.M. lacked credibility and reliability. In particular, Gideon contends that

> [t]he combination of [M.M.'s] dire mental and physical condition, her
> dependence on opioids, Gideon's refusal to give her the narcotic that

she was seeking, and the confrontation with Gideon's girlfriend as [M.M.] was leaving the office create a situation highly conducive to the lodging of a false or mistaken accusation of sexual impropriety" and that those "circumstances, coupled with the equivocal nature of her accusations – she 'guessed' she was being touched 'intimately' – should give this Court pause."

(Appellant's Brief at 24-25).

{¶44} "Although we review credibility when considering the manifest weight of the evidence, the credibility of witnesses is primarily a determination for the trier of fact." *State v. Banks*, 8th Dist. Cuyahoga No. 96535, 2011-Ohio-5671, ¶ 13, citing *DeHass*, 10 Ohio St.2d 230, at paragraph one of the syllabus. "The trier of fact is best able 'to view the witnesses and observe their demeanor, gestures[,] and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *Id.*, quoting *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 24, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80-81 (1984).

{¶45} After reviewing the evidence, we cannot conclude that the trier of fact lost its way and created such a manifest miscarriage of justice in its witness-credibility determination requiring that we reverse Gideon's sexual-imposition conviction as to M.M. and order a new trial. Even though M.M. made an equivocal statement after attempting to describe the way in which Gideon touched her buttocks, in addition to her testimony of the confrontation with Gideon's significant other as she was leaving Gideon's office, the jury also heard Gideon's testimony

"and we are mindful of the jury's 'superior first-hand perspective in judging the demeanor and credibility of witnesses.'" *State v. Suffel*, 3d Dist. Paulding No. 11-14-05, 2015-Ohio-222, ¶ 33, quoting *State v. Phillips*, 10th Dist. Franklin No. 14AP-79, 2014-Ohio-5162, ¶ 125, citing *DeHass* at paragraph one of the syllabus. *See Roy*, 2014-Ohio-5186, at ¶ 78. Furthermore, the jury heard the testimony of additional witnesses, offering testimony regarding similar acts by Gideon. *See Heiney*, 2018-Ohio-3408, at ¶ 94; *Roy* at ¶ 74. Likewise, the jury heard the testimony of State Medical Board Investigator Chad Yoakam ("Investigator Yoakam") who interviewed Gideon regarding the allegations in these cases. Investigator Yoakam also identified State's Exhibit G (Investigator Yoakam's recorded interview of Gideon), which was subsequently played for the jury, and identified State's Exhibit I (Gideon's written statement), which was admitted into evidence.

{¶46} In other words, even though Gideon alleged that he touched M.M. for medical purposes, the jury was able to compare Gideon's testimony against the balance of the State's evidence presented at trial and "it is well within the province of the trier-of-fact to determine [Gideon's] credibility in making those statements including the prerogative to find [Gideon's] denials not to be truthful." *State v. Voll*, 3d Dist. Union No. 14-12-04, 2012-Ohio-3900, ¶ 27. *See Heiney* at ¶ 130.

{¶47} Accordingly, the evidence that we summarized in our sufficiency-of-the-evidence analysis supporting Gideon's sexual-imposition conviction as to M.M. is weightier than the evidence against it. Therefore, we cannot conclude that the jury clearly lost its way and created such a manifest miscarriage of justice that Gideon's sexual-imposition conviction as to M.M. must be reversed and a new trial ordered.

{¶48} Gideon's fourth assignment of error is overruled.

{¶49} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgments of the trial court.

**Judgments Affirmed**

**WILLAMOWSKI, P.J. and SHAW, J., concur.**

**/jlr**