[Cite as *State v. Stallworth*, 2026-Ohio-2242.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
MARION COUNTY

STATE OF OHIO,

     PLAINTIFF-APPELLEE,

  v.

DWAYNE E. STALLWORTH,

     DEFENDANT-APPELLANT.

CASE NO. 9-25-37

OPINION AND
JUDGMENT ENTRY

Appeal from Marion County Common Pleas Court
General Division
Trial Court No. 24-CR-406

Judgment Affirmed

Date of Decision: June 15, 2026

APPEARANCES:

    *Felice Harris* for Appellant

    *T. Parker Schwartz II* for Appellee

**MILLER, J.**

{¶1} Defendant-appellant, Dwayne Stallworth ("Stallworth"), appeals the November 18, 2025 judgment of the Marion County Court of Common Pleas. For the reasons that follow, we affirm.

*Facts and Procedural History*

{¶2} On April 17, 2024, the Marion-Metrich Drug Task Force ("MARMET") obtained a search warrant to search for controlled substances and drug paraphernalia which described the location to be searched as follows:

> The address known as 140 CHARLES ST. Marion County, Ohio, including curtilage, sheds, outbuildings, garages, automobiles including a 2015 Silver Buick Lacrosse with Ohio Registration JZJ9361, safes, lockboxes, and any person located thereat. 140 CHARLES ST. is the upstairs apartment to the residence listed as 138 Charles St. 138 and 140 CHARLES ST. is a two-story wooden framed residence with blue in color siding. 140 is clearly visible beside the doors on the south side of the residence which leads upstairs.

{¶3} On that same day, MARMET surveilled the property for approximately one hour prior to executing the search warrant. During their surveillance, Stallworth was observed exiting the premises walking toward the silver Buick Lacrosse and reentering the premises. Stallworth exited the house a second time with a woman named Chelsea Hopper. Between the first and second time he exited the house, Stallworth changed from wearing shorts to wearing long pants. They drove away in the Buick Lacrosse and returned approximately 15 minutes later. When they returned, officials attempted to apprehend

Stallworth as he exited his vehicle. Stallworth was non-compliant and backed away for a few yards before finally submitting to officials. Chelsea Hopper was also apprehended outside the vehicle.

{¶4} Within the residence, officials found multiple Pyrex dishes and a red bowl with white residue, digital scales, plastic Ziploc bags, $4,000 in U.S. currency, scissors, a plate containing suspected cocaine, and plastic baggies containing suspected cocaine. Nearby, inside a metal container, officials found two outdated insurance cards issued to Stallworth. They also found a jewelry receipt with the name "Dwayne" written on it. No items of interest were located inside the silver Buick Lacrosse. Keys to the apartment were located, as well, during Stallworth's apprehension. There was conflicting testimony at trial regarding whether the keys were located during a search of Stallworth's person or whether they were found on the ground near where Stallworth was apprehended. It was later discovered that $80 of the $4,000 retrieved from the premises was previously documented as controlled buy money. The baggies of white powder were scientifically tested, and it was confirmed that 21.75 grams of cocaine were located on the premises, as well as 2.38 grams of a cocaine and fentanyl compound. In addition, white residue found on various paraphernalia items seized during the search was also tested and found to contain trace amounts of cocaine.

{¶5} On December 4, 2024, a Marion County Grand Jury indicted Stallworth on one count of possession of cocaine in violation of R.C. 2925.11(A) and R.C.

2925.11(C)(4)(d), a felony of the second degree, with forfeiture specifications; and one count of possession of a fentanyl-related compound in violation of R.C. 2925.11(A) and R.C. 2925.11(C)(11)(b), a felony of the fourth degree, with forfeiture specifications. Stallworth pled not guilty to both charges. Following a bench trial held on October 14, 2025, the court found Stallworth guilty of both charges. The court sentenced Stallworth to a prison term of 6 to 9 years on Count One and a prison term of 12 months on Count Two. These sentences were ordered to be served concurrently for a total indefinite prison term of 6 to 9 years.

{¶6} Stallworth timely filed this appeal. He raises four assignments of error.

**First Assignment of Error**

**The trial court erred and denied Dwayne Stallworth's federal and state constitutional rights to due process of law and a fair trial when it considered improper factors and unduly prejudicial other acts evidence as proof of guilt.**

{¶7} In his first assignment of error, Stallworth argues his rights under both the state and federal constitution were violated because the trial court improperly considered his status as the primary target of the criminal investigation which led to the issuance of the search warrant. Additionally, he contends the court wrongly treated the $80 of controlled buy money as evidence of his propensity to commit crimes related to drug trafficking, which he claims violates the restrictions on the use of propensity evidence under Evid. R. 404(B) and R.C 2945.59.

*Standard of Review*

**{¶8}** "Whether specific evidence will be admitted is a matter left to the considerable, but not unlimited, discretion of the trial court." *State v. Morris*, 2012-Ohio-2407, ¶ 19. "It is well established that a trial court's decision to admit evidence is an evidentiary determination within the broad discretion of the trial court and subject to review on an abuse-of-discretion standard." *Id*. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *State ex rel. Edwards v. Toledo City School Dist. Bd. Of Edn.*, 72 Ohio St.3d 106, 107 (1995). Furthermore "'the usual presumption [is] that in a bench trial in a criminal case the court considered only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary.'" *State v. Post*, 32 Ohio St.3d 380, 384 (1987), quoting *State v. White*, 15 Ohio St.2d 146, 151 (1968), *superseded by statute as stated in State v. Wilson*, 1994 Ohio App. LEXIS 4825 (9th Dist. 1994).

*Analysis*

**{¶9}** Following the bench trial, the court issued its verdicts and partially explained its reasoning as follows:

> Court having done this, has considered various factors. This is a constructive possession case. Court looks at the following things that [it] believes to be significant in the case.

One, Mr. Stallsmith (sic) was one of the main targets of this investigation, and a search warrant was issued for that residence.

(Oct. 14, 2025 Tr. at 141). Based on this limited statement, Stallworth contends the trial court, in reaching its verdicts, gave undue weight to the criminal investigation that supported the search warrant's probable cause finding. According to Stallworth, these considerations violated his federal and state constitutional rights requiring "a conviction rest on evidence adduced at trial, not on suspicion or judicial findings made outside the adversarial process," and consequently "diluted the State's burden and undermined the fairness of Dwayne Stallworth's trial." (Appellant's Brief at 8).

{¶10} Notably, Stallworth does not argue that any testimony regarding the search warrant or the criminal investigation was inadmissible. Indeed, Stallworth points to no authority for the proposition that evidence regarding search warrants issued during the investigation of a crime is inadmissible at trial or that the admission of such evidence, even if done in error, violates the defendant's presumption of innocence. *See State v. Oteng*, 2015-Ohio-1231, ¶ 23 (10th Dist.) ("Appellant has not cited, nor has the court found in its own research, a single case … holding either that evidence regarding search warrants issued during the investigation of a crime is, per se, inadmissible as evidence at the trial of the matter or that the erroneous admission of such evidence deprives a criminal defendant of his or her statutory and constitutional right to the presumption of innocence."). Accordingly, the mere fact the court, as trier of fact, commented that a search warrant was issued for the premises or that Stallworth was the target of the criminal investigation, does

not convert that information into substantial proof of guilt. Stallworth asserts that such consideration was used by the trial court as substantive evidence; however, at no point in the record does the trial court state its consideration of the warrant or investigation was used in such a manner.

{¶11} Furthermore, in Ohio there is a presumption that in a bench trial in a criminal case the court knew the law and considered only competent, relevant evidence in arriving at its judgment. *State v. Montgomery*, 2016-Ohio-5487, ¶ 90. "This presumption 'appropriately credits the judiciary with knowledge of the law and the ability to correctly apply it.'" *State v. Rivera*, 2013-Ohio-3244, ¶ 52 (8th Dist.), quoting *State v. Eley*, 77 Ohio St.3d 174, 181 (1996). In the present case, Stallworth "fails to direct this court to any authority demonstrating that evidence of a search warrant obtained during the investigation of the matter destroys the presumption of innocence." *State v. Aekins*, 2023-Ohio-322, ¶ 111 (10th Dist.). The trial court is charged with instructing the jury regarding "the meaning of the presumption of innocence and of reasonable doubt in each case." R.C. 2938.08. It naturally follows that the court is presumed to apply this same precept in reaching its verdict in a bench trial. Consistent with this principle, it is presumed the court properly understood the evidence of the search warrant and the investigation, not for its value as substantive proof of guilt, but for its limited contextual purpose to explain why law enforcement initiated the investigation, sought judicial authorization for the search, and conducted surveillance.

**{¶12}** As for the $80 in buy money, the trial court overruled an objection by Stallworth's counsel that such evidence was being presented as unlawful character evidence, that such evidence was not relevant to the issue of possession, and that such evidence was unduly prejudicial.  In overruling the objection, the trial court noted that a judge is presumed unbiased as factfinder and found the buy money both relevant and persuasive proof that the drugs within the apartment were possessed by Stallworth.

**{¶13}** Evid.R. 404(B)(1) prohibits the use of "[e]vidence of any other crime, wrong, or act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  In his brief, Stallworth highlights the court's statement that the buy money is "a difficult coincidence for the defendant to explain." (Oct. 14, 2025 Tr. at 144).  Stallworth implies this statement is proof the trial court considered the $80 as evidence of drug trafficking when reaching its verdicts on the possession charges.  However, immediately prior to making this statement, the trial court made the qualifying remark that evidence of the buy money "in and of itself isn't that, but taken together with all the other factors, it can't be overlooked." (Oct. 14, 2025 Tr. at 144).  Nowhere in the record does the trial court state such evidence was considered for the purposes of establishing his character.  Indeed, in overruling the objection of Stallworth's trial counsel, the court highlighted its relevance in relation to the drug possession charges as additional proof of the prevalence of drugs in a small apartment and not its propensity to show prior bad acts or Stallworth's character.  The trial court as factfinder in a bench

trial is presumed to view such evidence objectively and without prejudice. *See Post* at 384. Accordingly, absent any proof in the record the trial court considered the evidence of the buy money for unlawful propensity purposes, we do not find the trial court erred in its finding.

{¶14} Stallworth's first assignment of error is overruled.

**Second Assignment of Error**

**Dwayne Stallworth was denied the effective assistance of counsel guaranteed by the United States and Ohio Constitutions.**

{¶15} In his second assignment of error, Stallworth argues he was denied effective assistance of counsel pursuant to the Sixth Amendment to the U.S. Constitution and Article I, Section 10 of the Ohio Constitution when his trial counsel failed to file a motion to suppress evidence seized during an alleged unreasonable search of his person. Stallworth claims that "[n]o testimony [at trial] indicated the warrant authorized the search or seizure of Dwayne Stallworth." (Appellant's Brief at 15). Therefore, Stallworth contends a full inventory search of his person was unreasonable and the search should have been limited to a pat down search for weapons, and any additional evidence obtained during such a search should have been suppressed.

{¶16} "'Failure to file a suppression motion does not constitute per se ineffective assistance of counsel.'" *State v. Madrigal*, 87 Ohio St.3d 378, 384 (2000), quoting *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). In order to establish ineffective

assistance of counsel, a defendant must show "'(1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that but for counsel's errors, the proceeding's result would have been different.'" *State v. Rogers*, 2025-Ohio-4794, ¶ 25, quoting *State v. Mundt*, 2007-Ohio-4836, ¶ 62, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 694 (1984). "Both the deficient-performance and prejudice prongs must be met for a successful ineffective-assistance claim; neither is individually sufficient." *Id*.

{¶17} Stallworth presents some intriguing arguments regarding the effectiveness of his counsel and his failure to file a motion to suppress. However, "'a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.'" *State v. Bradley*, 42 Ohio St.3d 136, 143 (1989), quoting *Strickland v. Washington*, 466 U.S. 668, 697 (1984). Because we find no prejudice, we need not determine whether Stallworth's counsel fell below an objective standard of representation.

{¶18} When MARMET officials searched Stallworth, they found his wallet, a cell phone, cash, and glasses. Within the wallet, officials found two Michigan identification cards as well as an Ohio driver's license. While all three cards identified Stallworth, none of them listed 140 Charles Street as Stallworth's address. Stallworth fails to explain how possessing identification cards that state an address other than the one searched constitutes evidence he constructively possessed illegal drugs at the 140 Charles Street residence.

{¶19} Further, there was conflicting testimony at trial regarding whether the apartment keys were found on Stallworth during the search of his person or if they were found on the ground nearby where Stallworth was apprehended. Stallworth contends the keys, like the identification cards, were found during the search of his person and were subject to suppression.

{¶20} Detective Matthew Creps testified that "Detective [Colin] Lowe searched his person, [and] found a set of keys." (Oct. 14, 2025 Tr. at 38). Detective Colin Lowe testified the following on direct examination:

| [State]: | Did Mr. Stallworth have any keys on him? |
|---|---|
| [Det. Lowe]: | No, not that I found. |
| [State]: | Were there any keys near him when you detained him? |
| [Det. Lowe]: | I did not personally see a set of keys on him, or around the immediate area of controlling him. |
| [State]: | Were his keys located? |
| [Det. Lowe]: | Yes. |
| [State]: | Okay. And do you recall where they were located? |
| [Det. Lowe]: | I believe on the sidewalk . . . out front of the residence. |

(Oct. 14, 2025 Tr. at 87).

{¶21} As factfinder, the court was free to believe Detective Lowe's testimony that a key to the apartment was located on the ground near where Mr. Stallworth was on the

sidewalk. "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. "When examining witness credibility, 'the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact.'" *In re N.Z.*, 2011-Ohio-6845, ¶ 79 (11th Dist.), quoting *State v. Awan*, 22 Ohio St.3d 120, 123 (1986). Stallworth only refers to the vague testimony of Detective Creps who seemed to be speculating as to the precise location where the keys were found. Stallworth presents no substantive evidence which would contradict Detective Lowe's testimony where the key was found. Accordingly, we find the keys were not obtained as part of the search of Stallworth's person, but were located in plain view of law enforcement on the sidewalk.

{¶22} Stallworth has failed to show how suppression of the evidence found on his person would have resulted in a reversal of his convictions. The keys were not obtained during the search of Stallworth. Even if they were, there was evidence independent of the keys to justify the trial court's finding of constructive possession, such as the testimony regarding the surveillance of the home during which he entered and exited the apartment, the observation that he had a change of clothes within the apartment, the small size of the apartment, his insurance cards found within the apartment, the existence of the buy money within the apartment, and a receipt listing his name.

**{¶23}** Having failed to establish he was prejudiced by counsel's performance, Stallworth's second assignment of error is overruled.

**Third Assignment of Error**

**Dwayne Stallworth's conviction is against the manifest weight of the evidence.**

**Fourth Assignment of Error**

**The trial court erred in denying Dwayne Stallworth's Crim.R. 29 Motion for Judgment of Acquittal.**

**{¶24}** Stallworth's third and fourth assignments of error involve review of the same evidence and will, therefore, be considered together. In his third assignment of error, Stallworth contends his convictions were against the manifest weight of the evidence. In his fourth assignment of error, Stallworth argues the State's evidence was insufficient to sustain his convictions, and the trial court erred in denying his Crim.R. 29 motion for judgment of acquittal.

*Standard of Review*

**{¶25}** Manifest "weight of the evidence and sufficiency of the evidence are clearly different legal concepts." *State v. Thompkins*, 78 Ohio St.3d 380, 398 (1997). Therefore, we explain each legal concept individually before analyzing the facts in relation to each concept.

**{¶26}** When reviewing whether a conviction is against the manifest weight of the evidence, "an appellate court must review the entire record, weigh the evidence and all

-13-

reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the factfinder 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Williams*, 2024-Ohio-2307, ¶ 22 (3d Dist.), quoting *Thompkins* at 387. "A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses." *State v. Sewell*, 2016-Ohio-7175, ¶ 8 (3d Dist.), citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. "Only in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 2012-Ohio-5233, ¶ 9 (3d Dist.), quoting *State v. Hunter*, 2011-Ohio-6524, ¶ 119.

{¶27} On the other hand, "[a]n appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id*. "In deciding if the evidence was sufficient, we

neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 2013-Ohio-4775, ¶ 33 (1st Dist.). *See also State v. Berry*, 2013-Ohio-2380, ¶ 19 (3d Dist.), citing *Thompkins* at 386 ("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence.").

*Analysis*

{¶28} Regarding the manifest weight of the evidence, Stallworth points to the factors the trial court explicitly relied upon in reaching its verdicts. However, in a criminal "case tried without a jury the court shall make a general finding." Crim.R. 23(C). The trial court's general finding of guilt was, therefore, sufficient, without an explanation of its factual findings. This Court has repeatedly expressed that anything stated beyond the required "general finding" of guilt or innocence in a criminal bench trial is "mere surplusage" and has no legal significance. *State v. Ham*, 2009-Ohio-3822, ¶ 37 (3d Dist.). Even if the trial court were required to justify its verdicts with specific factual findings, Stallworth's arguments regarding the sufficiency and manifest weight of the evidence lack merit.

{¶29} To sustain a conviction for drug possession, the State must prove the accused "knowingly obtain[ed], possess[ed], or use[d] a controlled substance or controlled substance analog." R.C. 2925.11(A). "Possession of drugs can be either actual or constructive." *State v. Bustamante*, 2013-Ohio-4975, ¶ 25 (3d Dist.). "'A person has

"actual possession" of an item if the item is within his immediate physical possession.'" *Id*., quoting *State v. Williams*, 2004-Ohio-1130, ¶ 23 (4th Dist.). "A person has 'constructive possession' if he is able to exercise [dominion] and control over an item, even if the individual does not have immediate physical possession of it." *Id*., citing *State v. Hankerson*, 70 Ohio St.2d 87 (1982), syllabus. In order for constructive possession to exist, it must "be shown that the person was conscious of the presence of the object." *Hankerson* at 91. Furthermore, "[c]onstructive possession may be established by circumstantial evidence." *State v. Johnson*, 2023-Ohio-2638, ¶ 18 (3d Dist.), citing *State v. Voll*, 2012-Ohio-3900, ¶ 19 (3d Dist.). "[T]he surrounding facts and circumstances, including the defendant's actions, are evidence that the trier of fact can consider in determining whether the defendant had constructive possession." *Voll* at ¶ 19.

{¶30} In the present case, law enforcement officials, during the course of their investigation, witnessed Stallworth enter and exit the premises on multiple occasions. When they executed the search warrant, they discovered controlled substances and drug paraphernalia in plain sight throughout the small apartment. "Close proximity between a person and a controlled substance is, by itself, insufficient to establish constructive possession." *Johnson,* at ¶ 19. However, "'[m]ere presence in the vicinity of illegal drugs, coupled with another factor or factors probative of dominion or control over the contraband, may establish constructive possession.'" *State v. Durr*, 2012-Ohio-4691, ¶ 47 (4th Dist.), quoting *State v. Riggs*, 1999 Ohio App. LEXIS 4327, *12 (4th Dist. Sept. 13,

1999). Reviewing these factors collectively, we conclude that Stallworth's physical presence and close proximity to the contraband, when coupled with the significant circumstantial evidence of dominion and control, provide an ample basis to establish constructive possession.

{¶31} The record demonstrates Stallworth was not a casual or unwitting bystander. His possession of keys to the residence, his repeated entries and exits observed during law enforcement surveillance, and the discovery of his personal items and $80 in controlled buy money inside the apartment establish a connection to the premises that goes beyond his mere presence and proximity. Given the compact layout of the apartment, where controlled substances and related paraphernalia sat in plain view, the trier of fact could reasonably infer that Stallworth was fully conscious of the presence of the controlled substances and maintained the ability to exercise dominion and control over them.

{¶32} Weighing the evidence and all reasonable inferences alongside the credibility of the witnesses, we do not conclude that the trier of fact clearly lost its way or created a manifest miscarriage of justice. The weight of the evidence supports the trial court's verdicts. Stallworth's convictions are not against the manifest weight of the evidence.

{¶33} Furthermore, viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could find the essential elements of drug possession proven beyond a reasonable doubt and the trial court did not err by denying Stallworth's

Crim.R. 29 motion for judgment of acquittal. We find the State presented sufficient evidence to sustain the convictions.

**{¶34}** Stallworth's third and fourth assignments of error are overruled.

### *Conclusion*

**{¶35}** Having found no error prejudicial to the defendant-appellant in the particulars assigned and argued, the judgment of the Marion County Court of Common Pleas is affirmed.

***Judgment Affirmed***

**ZIMMERMAN, P.J. and WILLAMOWSKI, J., concur.**

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. *See* App.R. 30.

 

Mark C. Miller, Judge

 

William R. Zimmerman, Judge

 

John R. Willamowski, Judge

DATED:
/jlm